UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
**DELIA L. HOUSEAL,** )
)
              **Plaintiff,** )
)
         **v.** )    Civil Action No. 12-2007 (RMC)
)
**JOHN M. MCHUGH,** )
**Secretary of the Army,** )
)
              **Defendant.** )
_____)

**MEMORANDUM OPINION**

Under the Administrative Procedure Act, 5 U.S.C. §§ 706 *et seq.*, Delia L. Houseal seeks judicial review of a final decision by the U.S. Army Board for Correction of Military Records, refusing to cancel her U.S. Army Reserve Officers' Training Corps scholarship debt in the amount of $29,857.50. The Secretary of the Army has moved to dismiss Ms. Houseal's suit on two grounds: lack of subject matter jurisdiction and failure to state a claim. The motion will be denied.

**I. FACTS**

Ms. Houseal née Williams trained as a cadet in Howard University's U.S. Army Reserve Officers' Training Corps (ROTC) program for more than two years (September 1997 to February 2000). Compl. [Dkt. 1] ¶ 5.[1] Before matriculating to Howard, Ms. Houseal had signed a scholarship contract with the U.S. Army under its ROTC program. *See* Mot. to Dismiss [Dkt. 7], Ex. [Dkt. 7-3] at 16, 20-29. Acceptance of the scholarship, which covered up to $9,000 in annual tuition and educational fees for four academic years, placed certain conditions on all

---

[1] For ease of reference, page numbers cited herein come from the pagination inserted by the electronic case filing system.

ROTC candidates. *Id.* Among those obligations was the proviso that should a candidate "disenroll[] from the ROTC program for any reason" the Army would have the discretion to direct the ROTC candidate to repay "any amount of money, plus interest, equal to the entire amount of financial assistance paid by the United States for [her] advanced education from the commencement of [the] contractual agreement to the date of [her] disenrollment." *Id.* at 26.

Ms. Houseal alleges that she was subjected to sexual harassment shortly after enrolling in the Howard ROTC program. According to Ms. Houseal, Sergeant Miller,[2] a ROTC instructor, repeatedly harassed her sexually in multiple ways, ranging from "comment[s] about [her] breasts to solicitation for sex." Compl. ¶ 6. Ms. Houseal did not report this harassment for two years. *Id.* ¶ 7. After she complained, Lieutenant Colonel Ruffin[3] of the ROTC program at Georgetown University, who was assigned to investigate her case, and Lieutenant Colonel Tyrone Brown, the officer in charge of the Howard ROTC program, advised her to seek a leave of absence from ROTC while her complaint was under investigation. Compl. ¶¶ 9-10.

Though Ms. Houseal's leave request initially was denied, Compl., Ex. A at 2, it was granted approximately four months later. Compl. ¶ 12. On February 10, 2000, Lt. Col. Brown placed her on leave and instituted a "disenrollment action" against her. *Id.*, Ex. E [Dkt. 1-6] at 1. A disenrollment board convened on November 2, 2000, and recommended to U.S. Army Cadet Command that Ms. Houseal be disenrolled. *Id.*, Ex. G [Dkt. 1-8] at 3. Cadet Command, however, rejected this recommendation due to "insufficient evidence to substantiate indifferent attitude or breach of contract." *Id.*, Ex. H [Dkt.1-9] at 1. Cadet Command instructed Howard ROTC to institute a new disenrollment action and, among other directives, to make

---

[2] Sgt. Miller's first name does not appear in the record.

[3] Lt. Col. Ruffin's first name does not appear in the record.

2

"specific findings" concerning the following: Ms. Houseal's "allegation that she was forced to leave the program because of sexual harassment" and her "indifferent attitude or breach of contract." *Id.* at 2. A second disenrollment hearing was held on September 13, 2001, and the board again recommended disenrollment. *Id.*, Ex. R [Dkt. 1-19] at 3.[4]

On October 22, 2002, over two and half years after she was placed on leave, the Army informed Ms. Houseal that it had officially disenrolled her from Howard ROTC. The Army cited her "indifferent attitude or lack of interest in military training as evidenced by [her] failure to enroll in required Military Science courses" and informed Ms. Houseal that she either would have to serve "active duty in an enlisted status" or repay the $29,857.50 in scholarship funds that the Army had paid to date. *Id.*, Ex. T [Dkt. 1-21] at 1; Sec. Mem. [Dkt. 7-1] at 3. Although the notice advised Ms. Houseal that she had fourteen days "to appeal/dispute the amount or validity of [her scholarship] debt," Compl., Ex. T at 2; *see* 10 U.S.C. § 1552(b), the Secretary states that Ms. Houseal did not do so, Sec. Mem. at 3. Rather, Ms. Houseal waited until late 2007 to submit to the U.S. Army Board for Correction of Military Records (ABCMR) an Application for Correction of Military Records challenging the Army's repayment demand.[5] Compl. ¶ 27; Sec. Mem. at 3.

---

[4] Ms. Houseal did not attend the September 13 hearing. Compl., Ex. R at 1. She claims that she did not receive sufficient notice of the September 13 hearing, which prompted Howard ROTC to schedule a third disenrollment hearing for October 18, 2001. Compl. ¶ 25; Compl., Ex. S [Dkt. 1-20] at 1. However, Ms. Houseal avers that "Howard ROTC has supplied no record of a hearing" and posits that the October 18 hearing was "probably never held." Compl. ¶ 25.

[5] The parties disagree as to when exactly Ms. Houseal filed her Application for Correction of Military Records. Ms. Houseal claims that she filed the Application on October 1, 2007, for which ABCMR acknowledged receipt on January 8, 2008. Compl., Ex. U [Dkt. 1-22] at 1. The Secretary contends that Ms. Houseal did not file her Application until December 5, 2007. Sec. Mem. at 3; Mot. to Dismiss Ex. at 14-15. As discussed *infra*, 10 U.S.C. § 1552(b) bars applications for the correction of military records filed more than three years after the discovery

ABCMR received an advisory opinion from Cadet Command which stated that Howard ROTC had disenrolled Ms. Houseal for "breach of contract" and recommended against cancellation of her debt. Compl., Ex. V [Dkt. 1-23] at 1. Upon ABCMR's invitation, Ms. Houseal filed a rebuttal. Compl. ¶ 29. She stated that she "did not voluntarily breach the terms and conditions of [her] contract," but instead "was intentionally misinformed [by] Army ROTC staff at Howard University on how to properly move forward with the program while the sexual harassment investigation was in process." *Id.*, Ex. X [Dkt. 1-25] at 1.

ABCMR notified Ms. Houseal of its decision in a letter dated August 6, 2008. *Id.*, Ex. Y [Dkt. 1-26] at 1. ABCMR first noted that Ms. Houseal's Application was late because she had not filed it within three years after disenrollment from Howard ROTC, as required by 10 U.S.C. § 1552(b). Recognizing that the law empowers ABCMR to waive the statute of limitations in the interest of justice, ABCMR "elected to conduct a substantive review of [the] case." *Id.* at 2. It explained that it would excuse Ms. Houseal's late filing in the interest of justice "only to the extent relief, if any, [were] granted." *Id.* ABCMR then turned to the merits of Ms. Houseal's Application and denied it. ABCMR found that Ms. Houseal was "not entitled to cancellation of her ROTC scholarship debt" because the Army had disenrolled her from Howard ROTC for "breach of contract" and she had failed to submit evidence that demonstrated "that the record [was] in error or unjust." *Id.* at 9. Ms. Houseal argues that ABCMR's merits analysis contained two factual errors: it "incorrectly observed that [she] was disenrolled from ROTC 'due to refusal of a commission;'" and it failed to recognize that the results of the October

---

of an error or injustice unless ABCMR determines that excusing the late filing is in the interest of justice. Because the three-year anniversary of Ms. Houseal's disenrollment from Howard ROTC was October 22, 2005, it is inconsequential to this case whether Ms. Houseal filed her Application on October 1, 2007, or two months later.

18, 2001 disenrollment hearing were unavailable for its review because that hearing "was likely never held." Compl. ¶ 30.

Ms. Houseal filed suit on December 14, 2012. She argues that ABCMR's rejection of her Application was "arbitrary, capricious, an abuse of discretion, and contrary to law" because ABCMR did not "consider the relevant facts and circumstances of [her] disenrollment from ROTC and resulting discharge from the Army Reserve." Compl. ¶ 31. Specifically, Ms. Houseal contends that ABCMR's decision contained at least one "blatant factual error," and "failed to explain why taking a leave of absence from the ROTC program so that her sexual harassment allegation could be investigated constituted a breach." *Id.* Ms. Houseal asks this Court to declare ABCMR's decision contrary to law or remand the matter to ABCMR for renewed consideration. *Id.* at 9. The Secretary moved to dismiss and Ms. Houseal opposes. *See* Opp'n [Dkt. 8]; Surreply [Dkt. 15-1].

## II. LEGAL STANDARDS

The Secretary challenges the subject matter jurisdiction of this Court. He contends that Ms. Houseal's debt cancellation request, although styled as a prayer for equitable relief, is actually a claim for money damages against the United States in excess of $10,000, for which this Court lacks subject matter jurisdiction under the Tucker Act, 28 U.S.C. §§ 1346, 1491. The Secretary also argues that Ms. Houseal has failed to state a claim because she filed her military records correction request after the three-year statute of limitations expired and did not expressly ask ABCMR to waive that time bar.

### A. Lack of Subject Matter Jurisdiction

The Secretary's jurisdictional argument is made pursuant to Federal Rule of Civil Procedure 12(b)(1). That Rule requires courts reviewing a motion to dismiss to construe the

5

complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). A court also may consider materials outside the pleadings to determine its jurisdiction, *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005), and "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). Rule 12(b)(1) places the burden of demonstrating that subject matter jurisdiction exists on the party claiming such jurisdiction. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)). No action of a party can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

### B. Failure to State a Claim

The Secretary's motion to dismiss also is premised on Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss for failure to state a claim challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a complaint must be sufficient to "'give [a] defendant fair notice of what the claim is and the grounds upon which it rests'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that

is "plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In deciding a motion under Rule 12(b)(6), a court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Yet, it "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which [the court] may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). The court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

### III. ANALYSIS

#### A. Jurisdiction

The initial dispute between the parties is whether this Court has jurisdiction over Ms. Houseal's suit. It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212 (1983); *see also FDIC v. Meyer,* 510 U.S. 471, 475 (1994) (explaining that without a specific waiver, the federal government and its agencies are protected from suit by the doctrine of sovereign immunity). Ms. Houseal brings her suit under the Administrative Procedure Act (APA), which provides a limited waiver of sovereign immunity for actions

"seeking relief *other* than money damages." 5 U.S.C. § 702 (emphasis added). The decisions of military record corrections boards "are subject to judicial review" under the APA," *Chappell v. Wallace*, 462 U.S. 296, 303 (1983), and, if Ms. Houseal presents an APA claim, this Court is the appropriate forum to hear it. *See* 28 U.S.C. §§ 701 *et seq.*; 1331; 1391(e); and 2201-2202.

The Secretary argues that the Tucker Act applies. The Tucker Act provides only a limited waiver of sovereign immunity for money damage claims founded on contracts with the United States or federal constitutional or statutory authority. 28 U.S.C. § 1491(a).[6] It vests exclusive jurisdiction in the U.S. Court of Federal Claims when the monetary relief sought exceeds $10,000. *See Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (*per curiam*). The Secretary contends that Ms. Houseal's action is a request for money damages cloaked in declaratory relief garb. Because she seeks to cancel a debt to the United States greater than $10,000, he argues that this Court must dismiss the Complaint for lack of subject matter jurisdiction.

The question is whether Ms. Houseal's request for injunctive relief is actually a demand for money subject to the Tucker Act. The answer lies within this Circuit's "bright line"

---

[6] There are two parts to the Tucker Act: 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491. The former, which is "commonly known as the 'Little Tucker Act,'" *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996), provides district courts with concurrent jurisdiction for monetary damage claims that are $10,000 or less, *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006). Although Ms. Houseal maintains that the APA should apply, she offers to "waive[] any right or entitlement to recover relief relating to more than $10,000 of her debt to the United States government" should this Court determine that her case falls under the Tucker Act. Opp'n at 8. The Secretary counters that Ms. Houseal's attempt to fit her case within the Little Tucker Act is futile because she failed to bring it within six years after she was disenrolled from Howard ROTC. Mot. to Dismiss at 14 (discussing 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues"). Because this Court determines that it has jurisdiction over Ms. Houseal's matter under the APA, it does not address the potential applicability of the Little Tucker Act or § 2501's time bar.

approach to the statute. *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006). Tucker Act jurisdiction exists only where "the plaintiff seeks money or the district court grants it," *Kidwell v. Dep't of the Army, Bd. for Corr. of Military Records*, 56 F.3d 279, 285 (D.C. Cir. 1995). To determine the nature of the relief sought, courts in this Circuit "must generally limit [their inquiries] to the four corners of the complaint." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006). Where a complaint prays only for equitable relief, district courts consider whether the requested remedy "has considerable value independent of any future potential for monetary relief," to determine if the complaint "in essence" is a request for monetary damages. *Smalls*, 471 F.3d at 190. The D.C. Circuit has warned against inquiring into the consequences that flow from a plaintiff's victory, explaining that such an analysis requires a look outside the record and complicates the jurisdictional issue. *Kidwell*, 56 F.3d at 285.

Whether a request for equitable relief from an agency's refusal to forgive a debt is in essence a claim for money damages appears to be an issue of first impression in this Circuit. Many of the cases the Secretary cites are inapposite. *See Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) (Tucker Act jurisdiction lies in the Court of Federal Claims when plaintiff "[i]n essence . . . seek[s] a refund of money that it claims was wrongfully paid to the federal government" regardless of whether the refund would be sent directly to plaintiff or instead credited toward an existing debt owed to the United States); *Douglas Timber Operators, Inc. v. Salazar*, 774 F. Supp. 2d 245, 261 (D.D.C. 2011) (Tucker Act applies to suit seeking equitable enforcement of contractual agreement with the United States), *appeal dismissed*, No. 11-5137, 2011 WL 2618209 (D.C. Cir. June 24, 2011); *Bublitz v. Brownlee*, 309 F. Supp. 2d 1, 8-9 (D.D.C. 2004) (request for injunction correcting military record to show earlier date of promotion subject to Tucker Act because, if successful, plaintiff

would receive a monetary payout). Others are ambiguous as to the legal issue. *See Neutze v. United States*, 88 Fed. Cl. 763, 768, 771 (2009) (finding multiple potential bases for Tucker Act jurisdiction, including plaintiff's request for "basic pay lost" and educational debt relief, but doubting that the Court of Federal Claims has jurisdiction to declare plaintiff is not obligated to repay the United States for an Army ROTC scholarship that she received); *Wilson v. McHugh*, 842 F. Supp. 2d 310, 316 n.1 (D.D.C. 2012) (opining that but for plaintiff's decision to not seek monetary relief greater than $10,000, the court would not have jurisdiction over a prayer for judicial review of ABCMR's denial of several requests, which included back pay *and* discharge of education debt). Indeed, Ms. Houseal has identified only one decision directly on point. *See Roetenberg v. Sec'y of the Air Force*, 73 F. Supp. 2d 631 (E.D. Va. 1999).

The *Roetenberg* plaintiff asked for judicial review of the Air Force Board for Correction of Military Records's (AFBCMR) denial of her request to revise her military records and cancel her educational debt. *Id.* at 634-35. The Secretary of the Air Force, countering with the same argument raised in this case, contended that the Tucker Act stripped the district court of subject matter jurisdiction because the ultimate purpose of the plaintiff's suit was debt cancellation, which in essence was a request for monetary relief. *Id.* at 635. The *Roetenberg* Court, however, resoundingly rejected the argument. It explained that the possibility the plaintiff's suit for APA review could result in AFBCMR eliminating her educational debt did not transform her request for equitable relief into a suit for money damages. *Id.* at 635-36 ("[P]laintiff's complaint is [not] a claim for money damages against the government . . . [because] the financial benefit or detriment is merely a potential consequence of the equitable relief sought."). *Roetenberg* emphasized that a contrary ruling would shut such plaintiffs out of the court system entirely. Because the Court of Federal Claims may only grant equitable relief

as "an incident of and collateral to" rendering a money judgment, 28 U.S.C. § 1491(a)(2), "a federal district court [was] the *only* appropriate forum for [the] plaintiff's claim," *id.* at 636 (citing *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996)).

The D.C. Circuit in an analogous context has indicated that it would adopt the *Roetenberg* analysis. In *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), the D.C. Circuit considered whether jurisdiction could be had in district court when a farming family sought a declaration that the Department of Agriculture's suspension of more than $600,000 in agricultural program payments to them was arbitrary and capricious. *Id.* at 977, 984. The Circuit held that the district court had jurisdiction over the action. The Circuit found that "[t]he redress [plaintiffs] want—a redetermination, in a fair and impartial hearing, of their status under the subsidy statutes—simply is not money damages in compensation for the legal injury they allegedly have suffered." *Id.* at 984. While the *Roetenberg* plaintiffs certainly hoped that a new determination by the agency would result in the disbursement of federal monies, the requested declaratory order would not compel such a result. *Id.*

This Court concludes that it has subject matter jurisdiction over Ms. Houseal's claim. The analyses in *Roetenberg* and *Yeutter* are entirely persuasive in their fine distinctions between seeking a money judgment from the United States and seeking an equitable declaration of rights that may, or may not, lead to the payment of money from the public fisc. Indeed, the Federal Circuit also has recognized that "there is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place." *Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 945 (Fed. Cir. 2007) (determining that the Court of Federal Claims lacked jurisdiction under the Tucker Act where a plaintiff sought equitable relief against

11

the Department of Homeland Security that, if successful, would have relieved plaintiff's debt obligations to the government). Ms. Houseal's suit falls in the latter category. The present Complaint plainly does not seek money from the United States and, if her suit prevails, this Court will not award such relief. Ms. Houseal asks only for court review of an adverse agency action and either a finding that ABCMR's decision was contrary to law or a remand to the agency for renewed consideration. Such a request for equitable relief is as much non-cognizable in the Court of Federal Claims under the Tucker Act as it is squarely within this Court's jurisdiction under the APA. *See Remmie v. Mabus*, 898 F. Supp. 2d 108, 115-18 (D.D.C. 2012) ("Because any financial benefit Plaintiff might receive is not remotely within the Court's control, Plaintiff's claim cannot be characterized as a claim for money damages . . . and is not within the scope of the Tucker Act. As a result, Plaintiff's claim for injunctive relief plainly fits within this Court's subject-matter jurisdiction.").[7]

### B. Issue Waiver Before ABCMR

The Secretary argues in the alternative that even if this Court has jurisdiction over Ms. Houseal's claim under the APA, the matter must be dismissed for failure to state a claim. Sec. Mem. at 15-17. This argument is premised on 10 U.S.C. § 1552(b), which requires claimants to seek a military records correction "within three years after . . . discover[ing] the

---

[7] The Secretary counters that because Ms. Houseal has made "substantial" payments on her debt, which the government would be forced to refund if the Court grants her relief, her claim is for money damages and is subject to the Tucker Act. Reply, Ex. 1 [Dkt. 14-1] (Blanchard Decl.) ¶¶ 7, 8, 15 (indicating that Ms. Houseal has paid $7,122.77 toward the balance of her total debt, which due to interest, penalties, and administrative charges, now totals $33,734.82). However, "financial benefit or detriment is merely a *potential consequence* of the equitable relief sought." *Roetenberg*, 73 F. Supp. 2d at 635-36 (emphasis added). Further, the Secretary has failed to explain why this Court would not have jurisdiction over the sum Ms. Houseal has paid, $7,122.77, which is within the jurisdictional limitations of the Little Tucker Act.

12

error or injustice." 10 U.S.C. § 1552(b). The statute of limitations may be excused by a military corrections board if it determines that doing so would be "in the interest of justice." *Id.*

The Secretary argues that Ms. Houseal had three years from the time she was notified of her disenrollment and debt obligations to petition ABCMR for relief. Sec. Mot. at 15 (citing 10 U.S.C. § 1552(b)). Because she waited five years to file her Application, the Secretary reasons that she was obligated to ask ABCMR to excuse her late filing, *id.*, but she failed to complete that portion of the Application. Sec. Mot. at 14. The Secretary asserts that Ms. Houseal's failure to request leave to late file "deprived the agency of the opportunity to address anything she may devise at this late stage" and "forfeited her ability to make that argument to this Court." Sec. Mot. at 16.

Ms. Houseal does not dispute that her Application to ABCMR was untimely under 10 U.S.C. § 1552(b). She contends, however, that she provided an explanation to ABCMR for her late filing. Ms. Houseal notes that she informed ABCMR that Howard ROTC personnel had "intentionally misinformed [her] . . . on how to properly move forward with the [ROTC] program while the sexual harassment investigation was in process," Opp'n at 11; Compl., Ex. X at 1, so that she did not know whether the disenrollment notice was "just one in a series of administrative actions" or when she "needed to seek administrative appeal[]," Opp'n at 12. Moreover, Ms. Houseal argues ABCMR relieved her of the obligation to justify her late filing any further by connecting its decision to waive the time limit to its evaluation of the merits of her Application. Opp'n at 10. Ms. Houseal interprets ABCMR's statement that it would "conduct a substantive review of [her] case and, only to the extent relief, if any, [were] granted, [would] determine[] it [was] in the interest of justice to excuse [her] failure to timely file," Compl., Ex. Y at 2, to mean that if ABCMR decided that her "claim merited relief, the filing

time limit [was] waived and, if not it [was] not," Opp'n at 10. In other words, Ms. Houseal contends that because the analyses were explicitly merged, the entirety of ABCMR's decision (timeliness and merits) is subject to judicial review via the APA. Surreply at 10. The Court agrees.

ABCMR clearly indicated that it would waive the limitations period of 10 U.S.C. § 1552(b) if it found Ms. Houseal's claim to have merit. At the outset of its decision, ABCMR announced that it would conduct a "substantive review" of the merits of Ms. Houseal's case after which it would either grant or deny relief. If it did the former, the statute of limitations was waived, otherwise, it was not. In resolving Ms. Houseal's matter in this way, ABCMR followed the "sensible approach" that this Court recommended years ago. In *Allen v. Card*, 799 F. Supp. 158 (D.D.C. 1992), military correction boards deciding whether to waive § 1552(b)'s statute of limitations were advised to:

> analyze both the reasons for the delay and the potential merits of the claim based on a cursory review. If a claim appears particularly meritorious, it may be in the interest of justice to provide a complete review of the merits, even if there has been a delay in bringing the claim. The longer the delay has been and the weaker the reasons for the delay are, the more compelling the merits would need to be justify a full review.

*Id.* at 164-65. ABCMR thus expressly tied its waiver determination to its merits analysis of Ms. Houseal's Application.

There is no doubt that waiver determinations are subject to judicial review. *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) ("[N]either the language of § 1552(b) nor the statutory scheme in which it is embedded provide 'persuasive reason to believe' that Congress intended that waiver determinations be committed solely to agency discretion." (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)). Here, the Secretary

does not challenge ABCMR's decision to address the merits of Ms. Houseal's Application without explicitly deciding whether the statute of limitations should be waived. The Secretary instead faults Ms. Houseal for not explicitly placing an explanation for her late filing directly onto the Application form or in an appropriate motion. He stresses that Ms. Houseal's statements to ABCMR regarding her confusion as to the sexual harassment process were made only in rebuttal to an advisory opinion that Cadet Command submitted to ABCMR, which was silent as to whether the statute of limitations should apply to her Application. *See* Compl. Ex. V. The Secretary's arguments, however, ignore the plain text of 10 U.S.C. § 1552(b). That provision does not require applications for corrections of military records, filed more than three years after the claimant discovers an error or injustice, to contain *any* explanation for the late filing. 10 U.S.C. § 1552(b). It merely empowers a military records correction board to "excuse a failure to file within three years after discovery if [the Board] finds it to be in the interest of justice." *Id.* The Secretary would have this Court rewrite the statute to penalize late-filing applicants who do not submit the reasons for their delay on the application form. The Court declines to elevate form over substance and so constrain ABCMR's discretion in determining the interests of justice.

Ms. Houseal's merits arguments, in short, were the fulcrum on which waiver of § 1552(b)'s time bar would rise or fall. Indeed, ABCMR's sole reason for denying relief to Ms. Houseal was that "the overall *merits* of [her] case [were] insufficient as a basis for correction of [her] records . . . ." Compl., Ex. Y at 10 (emphasis added). The Secretary does not, and cannot, contend Ms. Houseal did not raise these merits arguments before ABCMR. Accordingly, Ms. Houseal has stated a claim that survives the Secretary's Rule 12(b)(6) motion.

15

## IV. CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss [Dkt. 7]. The Deputy Clerk will set a status conference. A separate Order accompanies this Memorandum Opinion.

Date: August 27, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge